**David Lee CRADLE, Petitioner,**

v.

**SUPERINTENDENT, CORRECTIONAL FIELD UNIT #7, Respondent.**

**Civ. A. No. 73-C-63-H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Jan. 14, 1974.

William A. Carter, III, Asst. Atty.
Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge.

David Lee Cradle brings this case before the court upon a *pro se* petition filed *in forma pauperis* which this court will construe as one for injunctive relief pursuant to 42 U.S.C. § 1983. The facts giving rise to petitioner's allegations may be summarized as follows: The petitioner was received at Correctional Field Unit # 30 on August 22, 1973, from the Virginia State Farm, where he previously had been incarcerated. A riot had occurred at the State Farm on July 15–16, 1973, as a result of which felony charges were placed against petitioner for participating in the riot and possessing a weapon. Numerous incidents involving petitioner at Unit # 30 culminated in charges being placed against him for disruptive behavior with the unit's Adjustment Committee. The charges were made by Assistant Superintendent Leroy N. Friese on September 14, 1973. On the same date, Friese referred petitioner to the Unit Classification Committee, which reviews all security classifications; it immediately met and recommended the transfer of petitioner to Correctional Unit # 7, at White Post, Virginia, which is a smaller facility. Petitioner was transferred to Unit # 7 the same day, and placed in isolation upon his arrival there. On September 17, 1973, petitioner was heard by an Adjustment Committee composed of Unit # 7 personnel concerning the charges that had been made earlier in Unit # 30. Superintendent Friese of Unit # 30 was present to testify. The Adjustment Committee found plaintiff guilty of the charges and recommended fifteen days in isolation. He was released from isolation status on September 28, 1973. Petitioner was apparently taking some unspecified medication while at Unit # 7, for which reason he was transferred to the Virginia State Penitentiary on November 14, 1973.

The circumstances leading to petitioner's transfer to Unit # 7 appear to be rather exceptional. Supt. Friese, in a letter to the Superintendent of the Bureau of Correctional Units reporting petitioner's transfer, states that "[i]t is the feeling of the staff, that if this subject [petitioner] had remained on this Unit, a full scale riot would have been the result of his actions." This letter has been made a part of the record herein. Supt. Friese says that on September 12, 1973, petitioner approached him in his office and demanded an immediate transfer to another unit. Upon being informed that he would have to appear before the Unit Classification Committee to request a transfer, Friese says that the petitioner remarked "[b]__ s__, I'll handle it my way," and thereafter began to harass the inmates and staff. Petitioner's subsequent actions, according to Friese's report, included throwing a serving tray in the cafeteria, using abusive language and exhibiting belligerent conduct towards inmates and guards, and refusing to follow directives. Supt. Friese was of the opinion that it was imperative that petitioner be transferred to a smaller unit so that he could be watched more closely, and to forestall trouble at Unit # 30. Accordingly, he notified the Area Administrator, W. D. Blankenship, and the Assistant Superintendent of the Bureau of Correctional Field Units, F. M. Hite. Blankenship instructed Friese to transfer peti-

tioner to Unit # 7. It was at this point on September 14, 1973, that the Unit Classification Committee met, which considered Friese's report and the advice of petitioner's counselor, Mrs. Carol-Lee Koch, and recommended transfer to Unit # 7, which, apparently owing to the urgency of the situation, was done that day.

Petitioner complains that he was held in isolation for two days upon arrival at Unit # 7 pending the Adjustment Committee hearing on September 17, 1973. The Division Guidelines for Corrections' Personnel, promulgated as a result of the decision in Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971), allow an inmate to be placed in "detention" for up to two days before appearing before an Adjustment Committee when his behavior is considered to be dangerous to persons or property. The record does not indicate why petitioner was placed in isolation, as he alleges, upon his arrival at Unit # 7, but under the circumstances it does not appear to have been entirely arbitrary or capricious for the administration at Unit # 7 to have chosen to have done so.

Petitioner complains that he should have been tried by the Adjustment Committee at Unit # 30 rather than at Unit # 7. One of the concerns of Landman v. Royster, supra, at 653, was that the decision to punish an inmate must be made by an impartial tribunal. This safeguard seems actually to have been furthered, rather than violated, by having staff personnel from Unit # 7, who had no connection with the occurrences giving rise to the charges, sitting in judgment. The charging officer from Unit # 30 appeared at the hearing to give details of the incidents which led to the charges.

Petitioner also says that he was not advised of his rights as concerned the hearing. Superintendent Friese states in his affidavit that a copy of the charges, which includes an enumeration of an inmate's rights that is to be signed by the inmate, was offered to pe-

titioner before he left Unit # 30, but petitioner refused to accept a copy or to sign any of the designated areas on the form upon which the charges were made. This refusal was witnessed by two guards at Unit # 30 who signed the charge form attesting to that refusal. Petitioner does not specify any particular right of which he was not informed; the record gives no indication that any of his rights were trampled upon or violated.

Petitioner states that since he was classified for light work because of the medication that he was taking at Unit # 7, he was unable to get a work assignment. L. F. Jenkins, the guard sergeant who directly supervises work assignments at Unit # 7, says by way of affidavit that petitioner requested a job shortly after arriving at Unit # 7, and was assigned to work with the dormitory clean up crew. Jenkins says that petitioner worked for several days, then quit of his own accord; because of a surplus of inmates on light work classification, the matter was not pursued. An inmate's work classification does not ordinarily present a justiciable federal question, and petitioner has presented no state of facts raising such a question. At any event, the issue has been mooted by petitioner's subsequent transfer to the penitentiary, as have his contentions that he was not given enough food or silverware, and that the kitchens at Unit # 7 were unsanitary.

Petitioner further contends that on October 31, 1973, he was called to the Administrative Office Unit # 7 and searched for a knife because of a tip from an informant. Petitioner contends that the search was conducted to harass and intimidate him. Sgt. Jenkins states that the search was made because petitioner had previously been involved in an altercation with another inmate, and that inmate complained to guards that petitioner had threatened him and was seeking revenge; other inmates advised guards that petitioner was seen sharpening a knife. The search was conducted

with negative results, and no charges were placed against petitioner. To Jenkin's knowledge, no other searches were made of petitioner during his stay in Unit # 7. The court sees no constitutional deprivation in this action. Prisoners, and guards as well, deserve protection from attacks by inmates, and prison officials must take reasonable precautions to assure their safety. .Woodhous v. Commonwealth, 487 F.2d 889 (4th Cir. 1973).

In light of the above reasons, the respondent's motion for summary judgment is hereby granted, and the petition is accordingly dismissed.

The clerk is directed to send petitioner and counsel for respondent certified copies of this opinion and judgment.